UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

DAWN ROSS,                              )
                                        )
    Plaintiff,                      )           Case No.
                                        )        5:19-cv-261-JMH
v.                                      )
                                        )         **MEMORANDUM**
GRACE ROSS,                             )      **OPINION AND ORDER**
                                        )
    Defendant.                      )
                                        )

***

    This matter is before the Court on Defendant Grace Ross's motion to dismiss Plaintiff Dawn Ross's complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). [DE 4]. Plaintiff responded [DE 5] and Defendant replied [DE 8], making the motion ripe for review.

    Plaintiff argues that the divorce decree between her and her former husband, who died in 2019, is a qualified domestic relations order exempt from the Employee Retirement Income Security Act of 1974's requirements. While this Act and the terms of the decedent's life insurance policy itself usually govern proceeds paid to beneficiaries, qualified domestic relations orders can supersede those designations. Defendant, who was married to Plaintiff's former husband at the time of his death, claims that the mediation agreement and decree are not specific enough to be a qualified domestic relations order.

For the reasons stated below, all claims against Defendant are hereby dismissed.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Clarence Boyd Ross III was previously married to Plaintiff Dawn Ross. [DE 1-3 at 1]. Mr. Ross was married to the Defendant when he died in January of 2019. [*Id*. at 2]. The Plaintiff and Mr. Ross mediated their divorce and both parties signed a settlement agreement in December of 2012. [DE 1-3]. The Scott County Circuit Court approved and adopted the settlement agreement within its decree of dissolution of marriage. [DE 1-3 at 9]. Following divorce proceedings in April 2013, Mr. Ross married Defendant Grace Ross. [*Id.* at 1-2].

The parties' disagreement in this matter centers on a dispute about the terms of the settlement agreement, and specifically, its provision regarding Mr. Ross's life insurance proceeds. The agreement states:

> **Life Insurance**: [Mr. Ross] shall name [Plaintiff] the beneficiary of an amount sufficient to cover his support obligation of his life insurance policy through his employer Michelin. Further, [Mr. Ross] shall maintain the current private term insurance policy with a designation of [Plaintiff] as trustee of a trust for the children as the beneficiary until said policy expires.

[DE 1-3 at 6]. Further, the settlement agreement addresses exactly what Mr. Ross's support obligation should be:

> **Support:** Effective within 7 days of [Plaintiff] vacating the marital residence, and subject to the terms of the maintenance statute, [Mr. Ross] shall begin to pay

2

[Plaintiff] $3500 per month total support and shall
continue to do so until [Plaintiff] receives full social
security benefits and [Plaintiff] has an obligation to
apply for said benefits upon the first date [Plaintiff]
is eligible to claim social security benefits. Said
payment shall be prorated for the first month. All
further payments shall be due in 2 equal installments
on the 1st and 15th of each month. For tax purposes only,
the parties will consider $1500 of this amount to be
child support with the no tax consequence and the other
$2000 as maintenance with it being income to [Plaintiff]
and deductible to [Mr. Ross]. Counsel for [Plaintiff]
shall prepare and execute a wage assignment order and
until such time as [Mr. Ross] sees that amount being
withheld from his check he shall made said payments
directly to [Plaintiff].

[DE 1-3 at 5-6]. From these provisions, Plaintiff concludes that

she is entitled to life insurance proceeds in an amount equal to

the support she received during Mr. Ross's life.

Plaintiff pleads that Mr. Ross's policy was initiated through

his employer Camso[1] and was administered by the Unum Life Insurance

Company of America.[2] [DE 1-3 at 2]. Plaintiff states that proceeds

from a life insurance policy were paid to Defendant upon Mr. Ross's

death. [*Id.*]. The parties agree that the dispute and insurance

policy or policies in this case are governed by the Employee

Retirement Income Security Act of 1974. [DE 4 at 1]. Plaintiff

seeks a declaration that the divorce decree and settlement

agreement are collectively a qualified domestic relations order

---

[1] The Plaintiff calls the company Camoplast, but Camso is the
current name of Mr. Ross's last employer.
[2] The parties have not attempted to interplead Unum in this action,
presumably because the proceeds have already been paid to
Defendant.

3

under the Act. [DE 1-3 at 2]. She further argues that she is the proper beneficiary of the proceeds paid to Defendant in an amount equal to the support obligation in the settlement agreement. [*Id*.]. Plaintiff also alleges a count of "money wrongfully received," stating that Defendant is not entitled to the proceeds except for any amount in excess of what is owed to Plaintiff.

Defendant filed a motion to dismiss the complaint for failure to state a claim, in lieu of an answer. [DE 4]. Plaintiff timely responded [DE 5] and Defendant replied. [DE 8]. Several months after the motion to dismiss was fully briefed, Plaintiff filed a motion for summary judgment. [DE 9]. Defendant responded [DE 10] and Plaintiff did not reply.

## II. STANDARD OF REVIEW

A motion to dismiss[3] pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the plaintiff's

---

[3] Providing no analysis, Plaintiff argues in her response that Defendant's motion to dismiss introduces case law and facts outside of the pleadings, requiring the Court to construe it instead as a motion for summary judgment. [DE 5 at 2]. Where a defendant submits matters outside the pleadings on a motion to dismiss, the district court may convert a motion to dismiss into a motion for summary judgment. Fed. R. Civ. P. 12(d); *Wysocki v. Int'l Bus. Machine Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010). Defendant did not provide any additional exhibits or facts outside of the original pleadings in her motion to dismiss. As for the assertion that Defendant included new case law, it must be stated that legal arguments consisting of case and statutory law are expected in a motion to dismiss, where the Court asks only if there is a legal basis of relief. Additionally, it is inappropriate to consider a motion for summary judgment here, where the Defendant has not filed an answer and a motion to dismiss is pending.

complaint. The Court views the complaint in the light most favorable to the plaintiff and must accept as true all well-pleaded factual allegations contained within it. *Thompson v. Bank of Am., N.A.*, 773 F.3d 741, 750 (6th Cir. 2014). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible when it contains facts that allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct. *Id*. "The plausibility standard ... asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.

## III. DISCUSSION

### A. Qualified domestic relations order ERISA exemption

The Employee Retirement Income Security Act of 1974, better known by its acronym "ERISA," is a federal statutory scheme that regulates private retirement and health plans. 29 U.S.C. § 1103(c)(1). Under ERISA, participants and beneficiaries of these plans are determined "in accordance with the documents and instruments governing the plan." *Id*. § 1104(a)(1)(D). In 1984, Congress realized that ERISA's preemptive effect on state law could greatly impact the ability of spouses and dependents to receive

plan proceeds as intended following divorce. *See Sun Life Assurance Co. of Canada v. Jackson*, 877 F.3d 698, 700 (6th Cir. 2017); 29 U.S.C. § 1104(a)(1)(D)(discussing ERISA's preemptive effect on state law). Congress's solution was a new exemption for "qualified domestic relations orders." 29 U.S.C. § 1144(b)(7).

"A qualified domestic relations order includes any state 'judgment, decree, or order' relating to the provision of 'child support, alimony payments, or marital property rights' that recognizes an 'alternate payee's right to … benefits' and meets a number of other requirements." *Sun Life*, 877 F.3d at 700-01 (quoting 29 U.S.C. § 1056(d)(3)(B)(i)-(ii)). A domestic order meets the requirements of this exemption only if the order *clearly specifies*:

> (i) the name and the last known mailing address (if any) of the participant and the name and mailing address of each alternate payee covered by the order,
>
> (ii) the amount or percentage of the participant's benefits to be paid by the plan to each such alternate payee, or the manner in which such amount or percentage is to be determined,
>
> (iii) the number of payments or period to which such order applies, and
>
> (iv) each plan to which such order applies.

29 U.S.C. § 1056(d)(3)(C)(emphasis added).

Because the settlement agreement was drafted with less-than-perfect detail, the issue becomes the level of specificity required

to honor the state court decision, while also adhering to the requirements and purpose of ERISA. Plaintiff, in response to Defendant's motion to dismiss, states that "drafting perfection is not required" and that "substantial compliance with the requirements is all that is necessary." [DE 5 at 2].

The relaxed "substantial compliance" standard is only applicable to domestic orders drafted before the exemption's effective date of January 1, 1985. *Sun Life*, 877 F.3d at 701 (citing *Metro. Life Ins. Co. v. Marsh*, 119 F.3d 415, 422 (6th Cir. 1997)(divorce decree written before ERISA was amended led the court to demand less than literal compliance)).[4] Because the Plaintiff and Mr. Ross divorced nearly two decades after 1985, she must show that the terms of the agreement and order clearly specify the requirements listed in the statute. *Id*. While this standard demands more than substantial compliance, it does not require "rigidity" or "magic words." *Id*. In fact, as the United States Sixth Circuit Court of Appeals explained in *Sun Life*, "one may 'clearly specify' something by implication or inference so long as the meaning is

---

[4] Regrettably, the Court notes here that while Plaintiff did cite to and quote a portion of the *Marsh* decision, she omitted a phrase preceding the quoted sentence that specifically applies this test to divorce orders written before ERISA was amended. [DE 5 at 2]. She also cited to the Ohio district court's opinion in *Sun Life* without mentioning that the exact legal issue disputed here was directly addressed on appeal. [*Id.*]. It appears to be a blatant attempt to pull the wool over the eyes of the parties and the Court, so to speak.

definite." *Id*. (citing Oxford English Dictionary 159 (2d ed. 1989)). Further, "the statute does not require that a particular provision of the divorce decree clearly specify the relevant details. It requires the entire 'domestic order' to do so, examined in full, not silo by silo." *Id*. at 702 (citing *Russell v. Citigroup, Inc.,* 748 F.3d 677, 681 (6th Cir. 2014)).

The most disputed of the four requirements will be addressed first. As indicated above, Plaintiff must demonstrate that the life insurance plan in dispute is clearly specified in the order. The agreement specifically states that Plaintiff shall be the beneficiary of Mr. Ross's life insurance policy "through his employer Michelin." [DE 1-3 at 6]. Defendant argues that because Mr. Ross indisputably worked at a company called Camso at the time of his death, and pled that Camso distributed the policy, the policy at issue is not clearly identified in the agreement. [DE 4 at 4].

Following the Sixth Circuit's decision in *Sun Life*, a handful of federal district courts addressed this requirement directly. For example, in *Metropolitan Life Insurance Company v. McDonald*, the divorce agreement referred to a General Motors policy, but the decedent allegedly held several life insurance policies. 395 F.Supp.3d 886, 892 (E.D. Mich. 2019). However, the only policy offered by General Motors was the one at issue between the parties.

*Id*. Thus, the Michigan district court held that the divorce agreement clearly specified each plan to which the order applied. *Id*. In another Michigan case, *Teenor v. Leblanc*, the agreement vaguely stated "all life insurance policies," which the Court found included the plan at issue. 2019 WL 2074585, No. 18-cv-12364, *3 (E.D. Mich. May 10, 2019).

These cases demonstrate the impact of the "clearly specified" requirement. Like the agreement in *McDonald*, the divorce decree here specifically names a company the decedent elected a life insurance policy through. However, unlike the agreement in *McDonald*, the Plaintiff here did not make a connection between the policy paid out to the Defendant and the one described in the divorce decree. Additionally, the agreement is not so encompassing as to include all of the decedent's potential plans, like the agreement in *Tenor*.

Considering only the facts contained in the complaint[5] and its exhibits, the agreement is only clear on the fact that Plaintiff is entitled to proceeds of a Michelin policy. Because Plaintiff failed to provide any facts indicating that the Michelin

---

[5] In her response to the motion to dismiss, Plaintiff alludes to the fact that Michelin now owns Camso. [DE 5 at 4]. Thus, Plaintiff argues, the Camso policy is "indirectly, a Michelin policy." [*Id.*]. Regardless of the facts of this acquisition, Plaintiff does not plead that Michelin acquired Camso in the complaint. The Court may not consider facts outside of the pleadings on a motion to dismiss. Fed. R. Civ. P. 12(b)(6), 12(d).

policy in the agreement is the same one paid out to the Defendant, the Court cannot find that the documents, taken as a whole, clearly show that the plan paid out is the same one Plaintiff and Mr. Ross agreed to include in the mediation agreement.

Plaintiff and Defendant repeatedly complain of the inartful drafting of the mediation agreement. But what kills the claim here is the Plaintiff's failure to plead sufficient factual matter indicating that the policy at issue is the same one specified in the agreement. The Court cannot find that the plan is sufficiently definite as required by ERISA and the *Sun Life* decision, as to allow the divorce decree to supersede the terms of the policy paid to Defendant.

Because the Plaintiff's divorce decree does not meet the fourth statutory requirement of 29 U.S.C. § 1056(d)(3)(C), and all four elements are required to be designated a qualified domestic relations order, the claim fails in its entirety as a matter of law.

## B. Second claim for relief

Plaintiff's next request for relief is for "money wrongfully received" by the Defendant. Defendant argues that it is unclear if this claim is based in Kentucky or federal law. Regardless, she notes that if an individual can bring a claim under ERISA based on

the same facts, that claim is pre-empted. [DE 4 at 7]; *Aetna Health Inc. v. Davila*, 542 U.S. 200, 201 (2004)("… if an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B)."). Even if the claim is somehow not pre-empted by ERISA, Defendant points out that the allegations fail to meet the pleading standard outlined in *Ashcroft v. Iqbal*. [DE 4 at 7]; 556 U.S. 662 (2009)(a pleading must contain a short and plain statement of the claim showing the pleader is entitled to relief, more than a "the defendant unlawfully harmed me" accusation).

Plaintiff did not respond to Defendant's arguments about her second claim. When a party fails to respond to a motion or argument therein, the Sixth Circuit has held that the lack of response is grounds for the district court to assume that opposition to the motion or argument is waived. *Humphrey v. U.S. Att'y Gens. Office*, 279 F.App'x 328, 331 (6th Cir. 2008); *see also U.S. v. Huntington Nat. Bank*, 574 F.3d 329, 332 (6th Cir. 2009)("To preserve the argument, then, the litigant not only must identify the issue but also must provide some minimal level of argumentation in support of it."). Plaintiff's failure to respond leaves the Court in a position to guess what the claim is and what law governs it, which

certainly does not meet even the paltriest pleading standard. Thus, the second count in the complaint is hereby dismissed.

### IV. CONCLUSION

Having considered Defendant's motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), and Plaintiff's arguments to the contrary, the Court finds that Plaintiff's claims are hereby dismissed. Accordingly, **IT IS ORDERED** as follows:

(1) Defendant Grace Ross's motion to dismiss [DE 4] is **GRANTED**;

(2) Plaintiff Dawn Ross's pending motion for summary judgment [DE 9] is **DENIED AS MOOT**;

(3) All claims against Defendant Grace Ross are **DISMISSED WITH PREJUDICE**;

(4) Because there are no remaining claims against any defendant in this action, a final judgment **SHALL** be entered contemporaneously with the entry of this Memorandum Opinion and Order.

This the 14th day of January, 2020.



Signed By:

*Joseph M. Hood*

Senior U.S. District Judge